## BOX PATENTS, Inc., v. UNIVERSAL PAPER BOX MFG. CO.

### No. 9277.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1932.

J. Henry Kinealy, of St. Louis, Mo., for appellant.

Ralph Kalish, of St. Louis, Mo., for appellee.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

August 30, 1927, letters patent No. 1,641,012 for a "Paper Box" was granted and issued to one Frank J. Schleicher, the inventor. Thereafter, on April 6, 1928, Schleicher surrendered said patent to the Commissioner of Patents, and made application for the reissue thereof. June 18, 1929, reissue patent No. 17,328 was granted to said Schleicher. Thereafter, by assignment duly recorded in the United States Patent Office, appellant became the owner of this reissue patent. Appellant brought suit against appellee for infringement. Claims 6 and 7 of the reissue patent were relied upon. The court found that the claims in question were not infringed by appellee and dismissed appellant's bill for want of equity.

Our attention is first directed to the question of validity of these claims of the reissue patent. The original patent, No. 1,641,012, in its specification states the nature and object of the invention as follows:

"My invention relates to the manufacture of boxes and particularly to the manufacture of heart-shaped cardboard boxes such as are used more particularly for candy.

"The object of my invention is to lessen the cost of such boxes by eliminating the hitherto costly hand-manufacture necessitated by forming the sides of the box in a curve which made it impossible, from a practical standpoint, to form the bottom and sides of the box in one piece or to make the box by automatic machinery. I accomplish this object by making the sides of the box in straight sections approximately following a heart-shaped contour, and applying a base or cover sheet to

the box which is heart-shape in contour, and so nearly coincides with the side wall of the box that there is no unsightly difference between the wall of the box and the base or cover."

The accompanying drawings are the following:

The patent contained three claims whose contents are important in resolving this issue:

"1. In a box, a base with a curved heart-shaped contour, a bottom sheet mounted thereon, side walls integral with said sheet and comprising a straight rear portion slight-

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

ly shorter than the greatest width of the box, relatively short straight portions at the end of said rear portion and extending outwardly and forwardly therefrom and straight portions at the ends of said relatively short portions and extending inwardly and forwardly therefrom, to unite in a forwardly directed point.

"2. In a cardboard box, a base sheet with a heart-shaped curved contour, a bottom sheet mounted on said base and including integral elements bent upwardly to form a rear wall, extending in a straight line between points near the upper outer edges of the respective lobes of said base sheet and past the upper intersection of said lobes, and said walls each extending in straight lines downwardly and outwardly and then forwardly and inwardly toward the lower intersection of said lobes.

"3. In a cardboard box, an inner bottom element with a plurality of straight side walls formed integrally therewith and bent upwardly and disposed in a general heart-shaped arrangement about the edges of said element and another bottom element having a heart-shaped curved contour circumscribing the lower edges of said walls and attached to said inner bottom element."

The specification for the reissue patent departs sharply from that of the original patent. The material parts follow:

"This invention relates to boxes and has special reference to boxes made of cardboard or other appropriate material of sufficient stiffness to retain a desired shape and having an outside base member with cut or raw edge and held in connection with the bottom independently of the side wall.

"An object of the invention is to provide a box having its side walls held in connection with the bottom in combination with a cardboard base having a cut edge and held in connection with the bottom by means other than the means holding the side wall in connection with the bottom.

"Another object of the invention is to provide an improved box of approximate heart-shape and having the side walls connected with the bottom and top respectively of the box; in combination with a base and a top covering portion secured to the bottom and to the top respectively and by fastening means applied after the connection of the side walls to said bottom and top and having their marginal edges extending beyond the side walls of the bottom and the top so as to shield and guard the connections of the side walls with the bottom and top of the box,

said base and said top covering portion being attached to the bottom and top of the box respectively by means other than the means connecting the side walls of the bottom and top of the box respectively.

"Another object of my invention is to provide a box of novel and improved construction which may be manufactured largely by machinery so as to eliminate objectionable conditions of hitherto costly hand manufacture. This specific object may be obtained by providing a connection uniting the side walls with the bottom and top of the box respectively, which connection is different or separate from the means uniting the base and top covering portion with the bottom and top of the box respectively.

"Another object of the invention is to provide a box of the type and of the character mentioned wherein the ends of the side walls are secured together by means other than the means uniting the side walls with the bottom and with the top of the box respectively.
* * *

"According to this form of the invention the side wall of the box is formed integral with the bottom of the box. It is apparent that the means uniting the side wall with the bottom of the box is different from the means by which the base is secured to the under side of the bottom of the box; and, since the lid of the box is similarly constructed, it is apparent that the means uniting the side wall with the top of the box is different from the means uniting the cover portion of the box with the top. Further, according to this invention and in the broadest sense, the side wall of the box has permanent connection with the bottom of the box before the base is applied. As herein specifically shown the permanent connection between the side wall and the bottom of the box is obtained by forming the side wall integral with the box. So, too, in the lid of the box permanent connection between the side wall and the top is obtained before the cover portion of the lid is applied by forming the side wall of the lid in the same piece, that is to say, integral with the top of the lid. The invention in this respect, however, may be varied without departure from the principle thereof."

The reissue patent contains nine claims. The drawings are the same as those of the original patent. Claim 6, which, as the trial court says, is typical, includes all the elements of claim 7, and embraces some elements not claimed in the latter, reads thus: "6. In a box, a bottom, a sidewall extending perpendi-

cularly from said bottom and forming an enclosure having a point toward one side of the box and having its ends close to each other, means fastening together the ends of said wall, and a base attached to the outer side of said bottom by means other than the means holding said side wall in connection with said bottom and having a defined point in one edge and a sharp point at the other edge, whereby location of said base in relationship in which said defined point is adjacent to and midway of the sides of the enclosure and in which said sharp point is in alinement with said sharp point of said box essentially obtains a balanced adjustment of said base in which corresponding parts of its edges project uniformly beyond said side wall at all sides thereof."

In the specification of the reissue patent it will be seen that the entire reference is to a cardboard base "held in connection with the bottom by means other than the means holding the side wall in connection with the bottom." This element, in the same or similar language, is referred to no less than six times in the portions of the specification quoted above. It is the dominant element in claims 6 and 7 of the reissue patent in so far as those claims are intelligible. It is an element concerning which there is neither hint nor suggestion in the original patent. It is the one feature upon which emphasis was exclusively laid in argument, in conjunction with an alleged strengthening of the box as a result thereof. The justification for this reissue is stated to be that the attorney who drew the application for, and the specification and claims of, the original patent did not fully understand the nature of the invention. However, by reissue "new matter cannot be introduced nor can the scope of the invention be enlarged." McCormick Machine Co. v. Aultman Co., 169 U. S. 606, 610, 18 S. Ct. 443, 444, 42 L. Ed. 875.

"Where a reissued patent is granted upon a surrender of the original, for its alleged defective or insufficient specification, such specification cannot be substantially changed in the reissued patent, either by the addition of new matter or the omission of important particulars, so as to enlarge the scope of the invention, as originally claimed. A defective specification can be rendered more definite and certain, so as to embrace the claim made, or the claim can be so modified as to correspond with the specification; but, except under special circumstances, this is the extent to which the operation of the original patent can be changed by the reissue." Russell v. Dodge, 93 U. S. 460, 23 L. Ed. 973.

A reissue is subject to the qualification "that it shall be for the same invention as the original patent, as such invention appears from the specification and claims of such original." Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 831, 36 L. Ed. 658. The original invention cannot thereby be substantially enlarged. Pattee Plow Co. v. Kingman, 129 U. S. 294, 9 S. Ct. 259, 32 L. Ed. 700.

"Interpolations in a reissued patent of new features or ingredients or devices, which were neither described, suggested, nor substantially indicated in the original specifications, drawings, or patent office model, are not allowed." Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33.

"If letters-patent fully and clearly describe and claim a specific invention, complete in itself, so as not to be inoperative or invalid by reason of a defective or an insufficient specification, a reissue cannot be had for the purpose of expanding and generalizing the claim in order to embrace an invention not specified in the original." James v. Campbell, 104 U. S. 356, 26 L. Ed. 786.

These principles are consistently announced in text-book and decision. Hopkins on Patents, vol. 1, p. 484, par. 364; p. 483, par. 365; Walker on Patents (6th Ed.) vol. 1, p. 365, par. 283; Hartshorn v. Saginaw Barrel Co., 119 U. S. 664, 675, 7 S. Ct. 421, 30 L. Ed. 539; Electric Gas-Lighting Co. v. Boston Elec. Co., 139 U. S. 481, 487, 501, 503, 11 S. Ct. 586, 35 L. Ed. 250; Leggett v. Standard Oil Co., 149 U. S. 287, 13 S. Ct. 902, 37 L. Ed. 737; Dunham v. Dennison Mfg. Co., 154 U. S. 103, 14 S. Ct. 986, 38 L. Ed. 924; Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co. (C. C. A. 8) 19 F. (2d) 435; McDowell v. Ideal Concrete Machine Co. (C. C. A. 7) 187 F. 814; Lorraine v. Townsend (C. C. A. 9) 8 F. (2d) 673, 674.

As provided by statute, and as reiterated in the decisions, a patent may be reissued when the original patent is inoperative by reason of the fact that its specification was defective or insufficient, or the claims were narrower than the actual invention, provided these errors have occurred because of inadvertence or mistake, and provided further that the patentee is not guilty of fraud or deception. No such a situation is here presented. The original invention was complete

in itself and not shown to be inoperative. The desideratum was to eliminate hand manufacture and to reduce cost. The drawings show, and the specifications describe, a box only approximately heart-shaped, and it is said in the specification that the object of the improvement cannot be attained by forming the sides of the box in a curve, but only by making them in a number of straight sections, approximately following a heart-shaped contour. The claims are confined to this described construction. In the original specification and claims there is no suggestion of a box or structure "having its side walls held in connection with the bottom by means other than the means holding the side wall in connection with the bottom," which is the gist of the reissue patent, as contended in brief and argument, and the element upon which infringement is based. At the hearing, counsel for appellant stated that the bottom is the backbone of the reissue structure. The connection or attachment, that is, the "means" holding the cardboard base in connection with the bottom, is described as a strip of Manila paper. In the new claims relied on we find no description of a box with the side walls made in a number of straight sections, a construction insisted upon in the original patent as essential to the elimination of costly hand manufacture. There is nothing in the reissue specification or claims to teach or claim the making of the sides of the box in a multiple, great or small of straight sections. It is apparent that no specification, conceived to be defective, has been rendered more definite and certain, so as to embrace the claim made in the original patent; nor has the original claim made been so modified as to correspond with the original specification, as suggested in Russell v. Dodge, supra. There is no such relationship between the claims and specifications of the two patents. On the contrary, there have been interpolated in the reissue patent new features and devices, neither described, suggested, nor substantially indicated in the original specifications or drawings, a practice expressly forbidden. Seymour v. Osborne, supra. We, therefore, find the claims in suit void because not granted for the same invention as that embodied in the original letters patent.

The trial court found that the commercial box of appellant is not made in accordance with the diagrams and specifications of the reissue patent in suit; that its box is of a true heart-shape, the sides being formed in a true curve; that such boxes are old in the art; that the commercial box of appellee is similar to the commercial box of appellant, but that neither conform to the diagrams and specifications of the patent in suit; that, if these commercial boxes be held to read on the claims of the patent in suit, then both are anticipated by the prior patent to Palmer, No. 1,221,900. Its conclusion was that no infringement had been shown. While we agree with this conclusion reached by the trial court, we do not deem it necessary to the disposition of the case to carry the discussion further.

For the reasons hereinabove stated, the decree of dismissal is affirmed.