# TURNER & SEYMOUR MANUFACTURING COMPANY *v.* DOVER STAMPING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF. CONNECTICUT.

Submitted March 31st, 1884.—Decided April 14th, 1884.

*Patent.*

When an inventor takes out a patent founded on a claim which does not include his whole invention, and rests for twelve years, and then surrenders his patent and takes a reissue with a broader claim, under circumstances which warrant the conclusion that the act is caused by successful competition of a rival, he will be held to have dedicated to the public so much of his invention as was not included in the original claim. *Miller* v. *Brass Company*, 104 U. S. 350, cited and followed.

This was a bill in equity brought by the appellees to enjoin the appellants from infringing their rights as assignees of a patent for an improvement in egg-beaters. The decree below granted the injunction and determined the amount of profits. From this decree the defendant below appealed. The invention and claims are set forth in the opinion of the court.

*Mr. John S. Beach* and *Mr. John K. Beach* for appellant.

*Mr. E. Merwin* and *Mr. T. W. Clarke* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court. This is a bill in equity filed by the appellees as assignees of

Timothy Earle, for an injunction and an account, against the appellants, as infringers of reissued letters patent No. 6,542, for an improvement in egg-beaters, dated July 13th, 1875, for which the application was filed June 8th, 1875, the original No. 39,134, dated July 7th, 1863.

The bill was filed July 14th, 1877, an interlocutory decree declaring the infringement and granting a perpetual injunction was pronounced July 9th, 1879, and a final decree in favor of the complainants confirming the master's report of the amount of profits made by the defendants was entered April 26th, 1881. From this decree the present appeal is prosecuted.

The following is a copy of the reissued letters patent, in which the parts in italics are not in the original, and the parts enclosed in [ ] are in the original, and excluded from the reissue :

"To all whom it may concern :

"Be it known that I, Timothy Earle, of Lincoln (*formerly Smithfield*), in the County of Providence and State of Rhode Island, have invented [a] *certain* new and useful improvements in egg-beaters ; and I do hereby declare that the following specification, taken in connection with the drawing, making a part of the same, is a full, clear, and exact description thereof.

"Figure 1 is a view of the beater. Fig. 2 is another view of the same, with the rack which works it shown. Fig. 3 is a top view of the same.

"Various devices have been employed for the purpose of beating eggs more expeditiously than by the familiar hand process. One of these devices consists of two wire frames, one within the other, and made to revolve in opposite directions ; another consists of a propeller-blade inside of a wire frame, the frame and blades being made to revolve in opposite directions ; and still another consists of a propeller-blade, which is made to rotate, while a pair of beaters have at the same time a reciprocating motion.

"All these machines, and all others with which I am acquainted, possess the common fault that the beaters, whether of wire or of the form of propeller-blades, do not cut the yolk and white of the egg, but literally beat them.

"Now, as the albumen of an egg consists of a peculiar thick,

glairy substance, it can be worked more effectually with a cutting instrument than with one which has a blunt edge. In fact, so well is this understood that housewives [universally] *commonly* make use of the blade of a knife for the purpose.

" My invention is designed to obviate the difficulty referred to ; and consists in the use of *a revolving* frame, A, *formed of thin strips of metal of the form shown, and* mounted upon a spindle, B, around which it can freely rotate ; *and also of* an outer *fixed* frame, C, of the same general form as the inner one, but large enough to permit the inner frame to rotate within it. *The outer frame* is attached to the spindle B, and *with it* furnishes a support *or frame for the operative parts of the machine* [for it.] The inner frame is *further* provided with a series of cutters *or blades* [a a a a] *a a*, etc., arranged in any manner suitable for cutting *through* the fluid in many different [planes] *places*. These cutters *or blades* are simply pieces of sheet-tin or other suitable metal of the width of the inner frame, and *are attached to the same by their ends, as is shown, and they are all* so placed that their edges shall cut the material to be agitated when the frame A is rotated. *The blades which form the outer fixed frame C are also placed in a similar position, and when the machine is in operation, cut through the current of material which is carried past them by the revolving frame, and thus aid in the operation in a similar manner.* Upon the top of the frame A is attached a tooth wheel, D, through which, by means of the rack, E, Fig. 3, worked by the hand, a rotary motion is given *to the inner frame A* in alternate directions. *The frame C, at its upper end, is so formed and arranged in relation to the pinion D as to leave the proper space between them, upon either side, to receive the rack, E, and serve as a guide or bearing to keep the rack in gear with the pinion ; and H is a circular flange attached to the lower side of the pinion to prevent the rack from falling down.*

" *My invention also relates to the method of holding the machine in position while it is used. In the previous machines for this purpose the machine has been generally attached to or supported upon and in connection with the vessel which contained the materials to be operated upon, thus requiring a specific kind of vessel for the purpose, which, in effect, formed part of the machine ; or the frame of the machine was fixed to some stationary object, with the revolving beater or beaters projecting downward below the ma-*

*chine into the vessel which contained the matters to be treated, the vessel being held below the machine, and entirely detached from it. But by my improvement the machine becomes a separate detached implement, which can be used in any vessel, and without any mechanical fastening of the machine to the vessel or to any other object. This part of my invention, therefore, consists in providing the bottom of the fixed frame C of the machine with a foot, F, or other suitable support, to rest upon the bottom of the vessel to support the lower part of the machine and raise the revolving-beater frame A above the fixed frame C sufficiently to permit it to revolve freely ; and also providing the top of the machine with a handle, G, by which the machine can be held upright upon the bottom of the vessel by one hand, while the beater-frame is operated by the other, as is described.*

" When the machine is to be used it is placed with its foot F resting upon the bottom of the vessel containing the broken eggs. The left hand bears upon the handle G and holds the machine in position. The rack E, held by the handle in the right hand, is engaged with the pinion D, and the proper motion imparted to the frame A.

" It is obvious that a continuous rotary motion may be easily imparted to the frame A by means of a crank and suitable gearing, and the beneficial effect of the *blades or* cutters [a a a] *A, a, etc.*, would be obtained as well ; but I prefer the method described of communicating motion to frame A, for the reason that the machine is more easily cleaned and is more convenient for domestic use.

" [What I claim as my invention and desire to secure by letters patent is the use of a series of cutting edges a a a a when attached to a frame A, which is capable of being rotated substantially as described for the purpose specified.]

" *What I claim is :*

" 1. *The revolving beater-frame formed of thin plain blades or cutters, arranged to cut edgewise through the material by their rotation, substantially as described.*

" 2. *The combination of the fixed frame, which contains and supports the operative machinery, provided with a foot or support at the bottom, the handle at the top, and suitable mechanism for rotating the beater, substantially as described.*"

The following is a copy of Fig. 2 annexed to specifications and sufficiently illustrates them:

The cutting portion of the appellant's beater consists of an outer frame and inner frame, each of which is made to revolve around a central spindle by means of a cog-wheel and pinion. Each frame is composed of two curved pieces of tin joined together, or of one piece joined at its two ends so as to make nearly a circle; these pieces are thin, plain, flat pieces of tin, and are so arranged as to cut edgewise through the material by their rotation. In neither the inner nor the outer frame are there any additional blades or cutters like the blades a, a, a, a.

It is represented in the following drawing:

The controversy in the Circuit Court seemed to be mainly on the question of infringement; and that turned on the construction to be given to the first claim of the reissued patent, no point being made as to the second claim. It was insisted by the defendants below that their device was not an infringement of the claim as contained in the original patent, and that a fair construction of the first claim in the reissued patent would limit it substantially to the same thing. In deciding the point, the learned judge, holding the Circuit Court, said:

"The question of infringement of the first claim of the reissued patent depends upon the construction of the claim. If it should be properly limited so as to be confined to the frame with the cutters or blades, which are described in the specification and in the drawings, to wit: a frame with the cutters, a, a, a, a, then there is no infringement; but if the claim is to be construed so as to include a beater frame formed of thin, plain blades, then the invention which is recited in the first claim is found in the defendants' egg-beater.

"The devices which were in use prior to the invention of the plaintiffs' assignor were composed of round wire, which, by their rotation, broke rather than cut the material. The part of

the invention which is the subject of the first claim consisted in such an introduction of the knife-blade of the housewife and the mechanism for operating the blade into an egg-beater, that the egg could be rapidly cut, and the egg matter could be aerated, and be beaten into froth.    The original, and also the reissued specification, dwelt upon the particular form of the cutters of the inner frame, and the original claim limited the invention to the cutters a, a, &c., but the scope of the invention was larger, and the principle was embodied in any revolving frame composed of thin and plain, as distinguished from corrugated, cutting surfaces, so arranged as when rotated to cut edgewise through the material, provided the frame was constructed and arranged substantially in the manner described in the specification.    It is not claimed that the reissue is void, upon the ground that it is for a different invention from that shown or indicated in the original specification, but such a construction is attempted to be given to the reissued claim, as would limit it to the precise language of the surrendered patent. The patent was surrendered because the grant was not co-extensive with the invention, and it would be an unnatural construction of the reissued patent, which should cramp the claim within the limitations which had been discarded.    In my opinion, the natural meaning of the words which were used is to be permitted, and giving to the claim such a freedom of construction, the defendants' device is an infringement."

We are quite satisfied that the difference between the original claim and the first claim of the reissued patent, is substantial and not verbal.    The former is necessarily limited to the particular device described as a frame, with a series of cutting edges attached, in the mode designated, and capable of rotation.    The latter embraces every revolving beater-frame, formed of thin, plain blades or cutters, arranged to cut edgewise through the material by their rotation.    It is immaterial whether or not the latter might have been covered by the language of the specification, as included in the invention.    We are dealing with the claims, and nothing else.    And it cannot be successfully contended that the original claim implicitly contained all that is expressed in the claim of the reissued

patent.  The original claim has been made broader by the reissue, so as to embrace the device used by the appellants, which was not previously an infringement.

And that raises the question, whether, under the circumstances disclosed by this record, the reissue is valid.

To avoid this question, it is, indeed, contended now by the appellees, that the two claims under examination are identical; that their apparent differences are merely literal; that their meaning is the same; and this conclusion is thought to be reached, not by restraining the reissue to the language of the original, but by a process of construction, by the use of supposed implications, to expand the words of the original so as to cover everything embraced in the reissue; the only alternative, indeed, that could be adopted, to escape the inconsistency of maintaining that claims, which were diverse upon the question of infringement, were identical upon the question of the validity of the patent.

But, as already intimated, this position is not tenable. There is nothing in the language or recitals of the original patent, nor are there any just and reasonable inferences of which they are susceptible, which justify a construction of the claim that would embrace any device other than that described in the specifications and represented in the drawings; much less to include every mechanical arrangement which embodies a cutting edge with a revolving frame, to cut instead of break the egg material upon which it is meant to operate.

The question then recurs, what are the circumstances which affect the validity of the reissue, and how do they affect it?

They are few, but decisive.  The original patent was issued July 7th, 1863.  Eleven years after, in 1874, the competition of the appellants' device became apparent and was felt.  In 1875, application was made for the reissue; the original patent was surrendered and the reissued patent granted, July 13th, 1875.  Here is a delay of nearly twelve years, without the offer of an explanation or excuse, without even the suggestion of inadvertence or mistake in the original application.  The only inference that can be drawn is, that the discovery and experience of successful competition in 1874 suggested first and led

to the discovery, that the original claim did not cover every-thing that might have been embraced, and was not broad enough to maintain the monopoly desired but not secured.

This brings the case directly within the principle of *Miller* v. *Brass Company*, 104 U. S. 350, and the numerous others which have followed it, including that of *Clements* v. *Odorless Apparatus Company*, 109 U. S. 641, all of which have been decided since the interlocutory decree in this case was pronounced.

For these reasons,

*The decree of the Circuit Court is reversed, and the cause is remanded, with directions to dismiss the bill, and it is so ordered.*