# FLOWER *v.* DETROIT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MICHIGAN.

No. 203.  Argued April 3, 1888.—Decided May 14, 1888.

Claim 1 of reissued letters patent No. 6990, granted March 14, 1876, to Thomas R. Bailey, Jr., for an "improvement in hydrants," namely, "In combination with a hydrant or fire-plug, a detached and surrounding casing C, said casing adapted to have an independent up and down motion sufficient to receive the entire movement imparted by the upheaval of the surrounding earth by freezing, without derangement or disturbance of the hydrant or plug proper, substantially as shown," is invalid, as being an unlawful expansion of the original patent.

The drawing of the original patent was materially altered, and new matter was introduced into the specification of the reissue.

The decision in *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87, applied to this case.

In the present case the reissue was not applied for until nearly eight years after the original patent was granted, and the reissue was taken with the manifest intention of covering, by an enlarged claim, structures which in the meantime had gone into extensive public use, and which were not covered by any claim of the original patent.

Claim 3 of the reissue, namely, "The combination of the hydrant or fire-plug pipe A, supply pipe B, valve D, casing C, and stuffing-box H, substantially as and for the purpose shown," is either an unlawful expansion, in regard to the casing, of what is found in the original patent, or, if construed narrowly, in regard to the casing, is anticipated, on the question of novelty.

IN EQUITY, for the infringement of letters patent. Decree dismissing the bill. Complainants appealed. The case is stated in the opinion.

*Mr. Edward J. Hill* for appellants.

*Mr. George L. Roberts* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Eastern District of Michigan, by James

Flower, Thomas Flower, and George Flower, against the City of Detroit, the Fire Commission of the City of Detroit, Benjamin Vernon, president thereof, and the Board of Water Commissioners of the City of Detroit, for the infringement of reissued letters patent No. 6990, granted March 14, 1876, on an application filed February 17, 1876, to Thomas R. Bailey, Jr., for an "improvement in hydrants," the original patent, No. 75,344, having been granted to said Bailey, March 10, 1868. Among the defences set up in the answer, it was alleged that new matter, not constituting any substantial part of the alleged invention upon which the original patent was granted, was introduced into the specification of the reissue, and that the reissue is not for the same invention as the original patent, and is void.

The specifications and claims of the original and of the reissue are here placed side by side in parallel columns, the parts in each which are not found in the other being in italic.

| *Original.* | *Reissue.* |
|---|---|
| "To all whom it may concern: | "To all whom it may concern: |
| Be it known that I, T. R. Bailey, Jr., of Lockport, in the county of Niagara, and State of New York, have invented a new and improved hydrant fire-plug; and I do hereby declare *that* the following *is* a full, clear and exact description thereof, which will enable *those* skilled in the art to make and use the same, reference being had to the accompanying *drawings, forming* part of this specification. | Be it known that I, T. R. Bailey, Jr., of Lockport, in the county of Niagara, and State of New York, have invented a new and improved hydrant fire-plug; and I do hereby declare the following *to be* a full, clear and exact description thereof, which will enable *others* skilled in the art *to which my invention relates* to make and use the same, reference being had to the accompanying *drawing, which forms* a part of this specification. |
| This invention relates to *a* | This invention relates to |

*new and improved method of constructing* fire-plugs or hydrants; *and the invention consists in operating a cylinder-valve in a suitable case, and in the arrangement and combination of parts connected therewith, as hereinafter described.*

Figure 1 represents a longitudinal central section of *the* hydrant, *showing the parts of which it is composed and the manner of their arrangement.* Fig. 2 *is* a cross-section of *Fig. 1* through *the line x x.*

*Similar letters of reference indicate corresponding parts.*

A represents the hydrant-tube, from which *the* water is discharged. B is the horizontal section which is connected with the ' water-main,' and which *forms* the valve-chamber.

C is a loose casing around the hydrant-tube, *for protecting the tube from dirt, etc.* D is the cylinder-valve, *which has* its seat at its lower end, *on* elastic *or leather* packing, secured in a groove, as *seen in the drawing* at *a.* E is a rod, having a screw thread on its upper end, by which the valve

*improvements in the construction of* fire-plugs or hydrants.

*In the drawing,* Figure 1 represents a longitudinal central section of *a* hydrant *according to my invention;*

Fig. 2, a cross-section of *the same* through *lines x x of Fig. 1.*

*My invention consists in the following parts and combinations, as hereinafter specified and claimed, wherein*

A represents the hydrant-tube, from which water is discharged. B is the horizontal section which is connected with the water-main, and which *may form* the valve-chamber.

C is a loose *movable* casing around the hydrant-tube. D is the cylinder-valve, *having* its seat at its lower end, *upon suitable* elastic packing, secured in a groove, as *shown* at *a.* E is a rod, having a screw thread on its upper end, by which the valve is operated. F is a sleeve-nut *engaged* with

is operated. F is a sleeve-nut, *which engages* with the screw on the rod, *raising* and lowering *it* as the nut is turned. This nut is turned by a wrench on the head G.

The sleeve-nut is *secured* in the cap of the hydrant by a collar, and packing under the hollow cylinder stuffing-box H, *as seen in the drawing.* J is a yoke, which is attached to the rod E by a set-screw, and *which* is *secured* in the tube A, and prevented from turning, as it moves up and down, by projecting lugs, as *seen in* Fig. 2; *and* it will be *seen* that the arrangement is such that the rod and valve may be raised and lowered without being rotated. *This secures* a uniform and perfect bearing of the valve on its seat, the packing *a* remaining undisturbed.

Provision is made for the discharge of the waste water by an orifice beneath the valve D, *marked f,* which orifice is opened and closed by a valve *marked g, as seen in the drawing.* h *is* a wing *on* the top of this valve.

As the cylinder-valve D descends the angular flange *i* on its inside *strikes* the wing *h and* raises the valve, as *seen*

the screw-*nut* on the rod E, *lifting* and lowering *said rod* as the nut is turned *one way or another.* This nut is turned by a wrench *or crank, or other suitable device* on the head G.

The sleeve-nut is *screwed* in the cap of the hydrant by a collar, and packing under the hollow cylinder stuffing-box H. J is a yoke, which is attached to the rod E by a set-screw, *or its equivalent,* and *it* is *screwed* in the tube A, and prevented from turning, as it moves up and down, by projecting lugs, as *shown in detail at* Fig. 2. It will be *noticed* that the arrangement is such that the rod and valve may be raised and lowered without being rotated, *thus securing* a uniform and perfect bearing of the valve on its seat, the packing *a* remaining undisturbed.

Provision is made for the discharge of the waste water by an orifice, *f,* beneath the valve D, which orifice is opened and closed by a valve *g.* A wing *h is provided upon* the top of this valve.

As the cylinder-valve D descends, the angular flange *i* on its inside, *striking* the wing *h,* raises the valve, as *shown* in

in the drawing, *thus allowing* any water which may remain in the hydrant to escape through the orifice *f* and aperture *k*. *It will be thus seen that no water will be left in the hydrant to freeze in cold weather.*

The tube *A* is secured to the horizontal section B by a ring-nut, *m*, which contains recesses for packing-rings around the valve, as *seen* at *n n*. Packing *around* the valve is secured by another ring-nut *o*, and also under the end of the tube A; as *seen* in the *drawing.*

P represents the discharge-pipe, with a screw for the attachment of the hose, and a cap-piece for covering the pipe when the hydrant is not in use.

the drawing, *and allows* any water which may remain in the hydrant to escape *down* through the orifice *f* and aperture *K*, *thus preventing any retention of water above the freezing level.*

The tube *A* is secured to the horizontal section B by a ring-nut, *m*, which contains recesses for packing-rings around the valve, as *shown* at *n*. Packing *about* the valve is *also* secured by another ring-nut *o*, and also under the end of the tube A, as *shown* in the *drawings.*

P represents the discharge-pipe, with a screw for the attachment of the hose, and a cap-piece for covering the pipe when the hydrant is not in use.

*It will be observed that the casing C loosely rests upon the main B, or upon a branch projecting upward from the same. This casing extends upward, enveloping the main portion of the water-pipe A, at least that portion which is subterranean. Said casing extends upwards and fits loosely about the plug or hydrant at the portion A'. Above the upper terminus of the casing C is provided the bead a upon the*

hydrant proper. Sufficient space is left between the bead a and the upper terminus of the casing C to permit of sufficient up-and-down play of the said casing C, for the purpose which will hereafter more fully appear. This distance between the bead and casing may be adjusted to any desired distance, thus lengthening or shortening it, by means of its screw attachment at its base.

The main function of the casing C is to prevent derangement of parts during cold weather by the ground alternately freezing and thawing around the hydrant or plug. This process of freezing causes the surrounding earth, by its expansion, to lift or upheave, and thus be liable to derange the hydrant or plug. This upheaval or movement is received by the casing C, which, by its capability of sliding loosely up and down, will accommodate the upheaval of the earth above mentioned, without any liability to derange the plug or hydrant. This is the chief function of the casing C, although it likewise serves the purpose of protection to the water-pipe A.

What I claim is—

Having thus described my invention, I claim as new and

desire to secure by Letters Patent—

1. A hydrant or *water* plug, *constructed substantially as shown and described,*—*that is to say, with the parts* A *and* B *connected together, as shown,* and with a cylinder-valve and a waste-*water* valve connected and operated *in combination* substantially as herein *specified.*

2. *The arrangement of the parts* A, B, valve D, *case* C, and stuffing-box H, as *herein described,* for the purpose *specified.*"

1. *In combination with a hydrant or fire-plug, a detached and surrounding casing* C, *said casing adapted to have an independent up-and-down motion sufficient to receive the entire movement imparted by the upheaval of the surrounding earth by freezing, without derangement or disturbance of the hydrant or plug proper, substantially as shown.*

2. *In combination with* a hydrant or fire-plug *pipe* A, *the supply-pipe* B, *and* cylinder-valve and waste-valve, connected and operated substantially as herein *shown and described.*

3. *The combination of the hydrant or fire-plug pipe* A, *supply-pipe* B, *valve* D, *casing* C, *and stuffing-box* H, *substantially as and for the purpose shown.*"

The drawings of the original and of the reissue are also here [see next page] placed side by side:

The material difference between the descriptive parts of the two specifications is that, in the reissue, it is stated that the casing C is movable, and that sufficient space is left between the bead *a* upon the hydrant proper, and the upper terminus of the casing C, to permit of sufficient up-and-down play of the casing C to allow it to slide loosely up and down, to accommodate the upward and downward movement of the earth during the process of freezing and thawing, without any

liability to derange the plug or hydrant. The casing could
not thus slide loosely up and down, unless sufficient space were
left between the bead *a* and the upper terminus of the casing.
No suggestion of such arrangement is found in the specifica-
tion of the original patent, and the drawing of that patent
shows no space between the upper terminus of the casing and

the bead or flange above it. This is new matter introduced into the specification of the reissue, contrary to the express inhibition of § 4916 of the Revised Statutes.

Claim 1 of the reissue is for an invention not indicated or suggested in the original patent, namely, the independent up-and-down motion of the casing. In addition to this, the drawing of the original patent shows a close contact between the top of the casing and the bead or flange above it, so as absolutely to forbid any such independent up-and-down motion of the casing as is covered by the first claim of the reissue, while the drawing, Figure 1, of the reissue, shows a sufficient space between the top of the casing and the bead or flange above it to admit of such independent up-and-down motion.

Issue having been joined, proofs were taken on both sides, and the Circuit Court entered a decree dismissing the bill, from which the plaintiffs have appealed. Its opinion accompanies the record, and is reported in 22 Fed. Rep. 292. It held that the reissued patent was invalid, as matter of law, upon a comparison of the original with the reissue. We concur in this view.

It is sought to sustain the validity of the reissue by attempting to show that the model filed in the Patent Office with the original application exhibited the invention covered by the first claim of the reissue. It is doubtful whether that fact is satisfactorily established. But, irrespective of this, the case falls directly within the recent decision of this court in *Parker & Whipple Co.* v. *Yale Clock Co.*, 123 U. S. 87. It was held in that case, that what was suggested in the original specification, drawings, or patent office model is not to be considered as a part of the invention intended to have been covered by the original patent, unless it can be seen from a comparison of the two patents that the invention which the original patent was intended to cover embraced the things thus suggested or indicated in the original specification, drawings, or patent office model, and unless the original specification indicated that those things were embraced in the invention intended to have been secured by the original patent. (See, also, *Hoskin* v. *Fisher*, 125 U. S. 217.) In the present

case, it cannot be seen from a comparison of the two patents that the original specification indicated that what is covered by the first claim of the reissue was intended to have been secured by the original.

In the present case, also, the reissue was not applied for until nearly eight years after the original patent was granted, and the reissue was taken with the manifest intention of covering, by an enlarged claim, structures which in the meantime had gone into extensive public use, and which were not covered by any claim of the original patent.

Infringement is alleged only of claims 1 and 3 of the reissue. As to the casing C of the third claim, it cannot, any more than the casing C of the first claim, be held to cover a casing which has the independent up-and-down motion referred to. Such casing must be construed to be the casing exhibited in the drawing annexed to the original patent, that is, one in which the up-and-down play is restricted by the overlapping bead or flange. On any other construction, claim 3 is an unlawful expansion, in regard to the casing, of what is found in the original patent. In addition to this, if the casing of claim 3 is only a casing which has no end play, it is anticipated by what is shown in letters patent No. 19,206, granted to Race and Mathews, January 26, 1858, which patent was the subject of the decision of this court in *Mathews v. Machine Co.*, 105 U. S. 54.

*The decree of the Circuit Court is affirmed.*